**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

SAVOR HEALTH, LLC,

                    Plaintiff,

v.

ANDREA DAY,

                    Defendant.

Civil Action No. _____

## COMPLAINT

Plaintiff Savor Health, LLC ("Savor"), for its Complaint against Defendant Andrea Day

("Day"), by and through its undersigned counsel, Reed Smith, LLP, hereby alleges as follows:

## SUMMARY OF THE ACTION

1. This action concerns breaches of restrictive covenants in Day's Consulting

Agreement, Confidentiality Agreement, Employment Agreement and Employee Covenants

Agreement with Savor (collectively "Agreements") and Day's actions in intentionally and

maliciously misappropriating Savor's confidential and proprietary information and trade secrets

after her employment with Savor was terminated for cause.

2. By this action, Savor seeks temporary and permanent injunctive relief to stop Day

from disseminating Savor's trade secrets, highly sensitive confidential and proprietary

information to Savor's competitors and to redress ongoing and future breaches of unambiguous

and narrowly tailored non-compete, non-disclosure, and non-solicitation restrictive covenants in

Day's Agreements with Savor.  Savor further seeks the return of all of the Savor's confidential

information and trade secrets in possession of Day or any of her affiliates, including but not

limited to Day's spouse, Matthew Day, access to Day's electronic devices for inspection, and an

Order directing Day to respond to discovery concerning her use and dissemination of Savor's

confidential information and trade secrets.

3.      Savor further asserts claims for breach of contract, trade secret misappropriation under 18 U.S.C. §§ 1836 *et seq*, common law misappropriation of confidential and proprietary information and trade secrets, breach of duty of loyalty, conversion and claims under the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 *et seq.*, and the Stored Wire and Electronic Communication and Transactional Records Access Act, 18 U.S.C. § 2701 *et seq.*

4.      Savor is a privately held digital health company which provides custom nutrition solutions to cancer patients.

5.      Savor hired Day in July of 2016 to provide assistance with expanding Savor's client network. As set forth in detail below, Day's performance over three years at Savor was consistently unsatisfactory and ineffective and, after repeatedly failing to deliver usable work product, Day was terminated for cause on August 1, 2019.

6.      Upon her termination for poor performance, Day embarked upon a calculated campaign of accessing, without authorization and in full awareness of the illegality of her actions, Savor's trade secrets, highly sensitive proprietary information, client lists, marketing and promotional materials, technological processes and confidential patient information protected under HIPAA[1].

7.      Within hours of her termination, Day proceeded to gain unauthorized access to Savor's Google, Salesforce, and Dropbox accounts, emails, and databases containing Savor's proprietary technology, confidential documents, client lists, and protected medical information. On the day of her termination, Day, unbeknownst to Savor, recovered her Savor passwords without authorization, and downloaded a vast amount of Savor's confidential information to her

---

[1] The medical information in Savor's possession is protected from illegal disclosure by Health Insurance Portability and Accountability Act ("HIPAA"), the legislation that provides data privacy and security provisions for safeguarding medical information. Its dissemination outside of Savor is prohibited.

personal devices.

8.      It has proved very difficult to determine the exact contents of the information Day downloaded or to recover the entire contents of that download, but it is indisputable that Day illegally downloaded on to her personal devices not only highly sensitive proprietary information and technology but also confidential patient information protected by HIPAA. This information, developed over the years and at great expense to Savor, is the cornerstone of Savor's business and competitive advantage in the marketplace, and would be of great value to Savor's competitors.

9.      A subsequent analysis of Day's laptop revealed that she continued to access and edit Savor's confidential documents for weeks after her termination, and her internet browser history revealed concerning activity where Day searched the internet for information on Savor's competitors, clients and vendors.   Day also searched the internet for instructions on how to conceal her illegal activities from Savor.

## THE PARTIES

10.      Plaintiff Savor is a privately held corporation organized under the laws of the State of New York with its principal place of business at 590 Madison Avenue, 21st Floor, New York, New York 10022.

11.      Defendant Day is a former consultant Savor in New York City who resides at 185 W. End Ave Apt. 3C, New York, New York 10023.

## JURISDICTION AND VENUE

12.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it presents claims that arise under federal law.

13.      Venue is appropriate in this District pursuant to 28 U.S.C. 1391(b)(1) and (2) because all Defendants are residents of this District and because a substantial part of the events

- 3 -

and omissions giving rise to the claims occurred in this district.

**FACTUAL BACKGROUND**

A.    **Savor's Business in Personalized Nutrition for Cancer Patients**

14.    Savor is a digital health company that has developed a knowledge-based expert technology platform to provide individually personalized, clinically and contextually appropriate nutrition interventions to cancer patients with a proprietary chat bot named Ina®, the Intelligent Nutrition Assistant.  Savor's proprietary technology platform was developed by a team of oncology-credentialed medical professionals, data scientists and developers relying on their clinical and technological expertise to address the unmet nutritional needs of cancer patients.  By applying the expertise of this team and the latest artificial intelligence-based technologies, Savor's platform is able to deliver effective individually personalized nutrition intervention and guidance which meets the unique needs of each individual cancer patient throughout their cancer journey.

15.    Savor has invested substantial time and resources in developing its technology over the last eight years beginning with proprietary algorithms to enable home delivery of individually customized meals to cancer patients and, over the last two years, expanding these algorithms, developing a proprietary database of nutrition interventions, and creating Ina®.

B.    **Savor's Confidential Information**

16.    Savor has expended and continues to expend substantial resources to generate and protect its confidential, proprietary and trade secret information because it is critical to developing, obtaining, retaining and expanding relationships with its clients.  Savor's proprietary technology and interventions are continually refined and enhanced and new ones are developed, further adding to its proprietary value.  This proprietary information is the foundation of Savor's success and, because it is so unique and differentiated in the market, it allows Savor to

effectively and successfully compete against other healthcare technology solutions to ensure Savor's ability to successfully assist cancer patients with their individual and changing nutritional needs and to deliver a return to its shareholders.

17.     In order to provide its personalized, clinically and contextually appropriate nutrition interventions to cancer patients in an engaging manner on demand, Savor created Ina®, the Intelligent Nutrition Assistant chat bot.   Savor's proprietary knowledge-based expert technology platform delivers personalized nutrition interventions through Ina® and is the result of years of collaboration among oncology-credentialed medical professionals, including Registered Dietitians, Registered Nurses, Medical Doctors, and social workers, data scientists and developers using their clinical and technological expertise.   The technology and expertise behind Ina® reflects specialized knowledge and insight that differentiates Savor from its competitors and is not publicly available.

18.     Savor's confidential information is not generally known to the public, and includes, but is not limited to, private confidential HIPAA[2]-protected medical information (Protected Health Information ("PHI")) pertaining to individual patients, their nutritional and medical needs, as well as a meticulously developed knowledge-based expert technology platform and a proprietary database of nutrition interventions which, together, deliver via SMS with Ina® personalized, clinically, and contextually appropriate nutrition  intervention to cancer patients on demand.  ("Confidential Information").

19.     Savor has developed relationships with and knowledge of many cancer advocacy groups, cancer centers, pharmaceutical companies, healthcare insurance companies, self-insured

---

[2] In order to effectively assist cancer patients with their nutritional needs, Savor necessarily obtains their medical information concerning the types of cancer, the stage and individual symptoms.  The medical information in Savor's possession is protected from illegal disclosure by Health Insurance Portability and Accountability Act ("HIPAA"), the legislation that provides data privacy and security provisions for safeguarding medical information.   Its dissemination outside of Savor, although through no fault of Savor, may expose Savor to liability under federal law.

employers, and other relevant organizations and individuals in the healthcare, oncology and oncology nutrition sectors. These relationships and contacts, meticulously developed over the years, are also critical to Savor's success and are kept confidential as they would be of great value to competitiors.

20.     Savor's Confidential Information also includes trade secrets, know-how, technical, operating, financial, and business information and materials, information regarding source codes, software programs and applications in various stages of development, algorithms, rules engines, computer and information systems, data structures, data reporting methodologies, research and development, new materials research, logos, designs, graphics, writings or other materials, formulae, works of authorship, techniques, discoveries, documentation, models and systems, sales and pricing plans, proposals, projections and techniques, profit margins, business and operational strategies, procedures, inventions, products, improvements, modifications, methodology, processes, concepts, records, files, memoranda, reports, plans, projects, proposals, price lists, pricing policies, pricing algorithms, vendor lists, privacy and security practices, sales account plans, sales force activity information, details of agreements and communications with customers and prospects, acquisition, expansion, marketing financial and other business information and existing and future products and business plans, marketing strategies, and actual or prospective client or customer lists, data, campaigns, contracts, and preferences, and employee and consultant information such as personnel, payroll, compensation and benefit data and plans, and all information contained in Savor databases and other programs and systems used by Savor.

21.     While employed by Savor, Day had access to a variety of databases containing Savor's proprietary and confidential information, as well as patient's private, HIPAA-protected PHI, including Savor's:

a.  Google drive, including all email, calendar and contacts, as well as documents including

   i.  strategic planning documents, including, but not limited to, the highly specialized research and development forming the basis for the Ina® platform, technology roadmaps and roadmap strategies;

   ii.  client information including, but not limited to, strategic initiatives and plans, Requests for Proposals ("RFP"), pitch materials and responses to RFPs, contracts, communications, work product, and detailed launch plans, all of which are covered under the Confidentiality Agreement and Day's other Agreements with Savor; and

   iii.  Vendor contracts including those with web developers, design professionals, public relations firms, and more;

b.  Salesforce account, containing client information including detailed contacts, marketing, meeting outreach, meeting notes and other account and personal contact details, and other information, as well as all patient PHI, all of Savor's proprietary interventions, client implementations, testing data and results, and more;

c.  Dropbox account, containing the majority of Savor's proprietary business documents, including Savor's highly specialized research and development materials;

d.  Jira and Confluence accounts, containing all of Savor's technology plans, roadmaps, features and function requests; and

e.   Savor's client and vendor lists and their contact information.

22.   Savor's Confidential Information is the foundation of Savor's success and drives Savor's ability to compete in the marketplace.  Savor has expended, and continues to expend, substantial resources to generate its Confidential Information because it is critical to providing effective services and continuing to address the unmet nutritional needs of cancer patients.

23.   The value of Savor's technology and knowledge lies in their confidentiality, and Savor's competitive advantage would be threatened if the information was known in the marketplace.

24.   Savor thus takes significant steps to protect its Confidential Information, including requiring consultants, like Day, to execute confidentiality agreements.  Consultants also must have credentials to log into Savor's various databases and systems.

25.   Savor's Confidential Information would be of significant economic value to competitors in the cancer care and other chronic medical condition management, nutrition, Artificial Intelligence ("AI"), and chat bot industries, if known to them.  In particular, a competitor would be placed at a competitive advantage upon obtaining Savor's Confidential Information.

**C.   Day's Confidentiality, Non-Competition and Non-Solicitation Agreements**

26.   In July of 2016, Day was retained as a consultant for Savor to develop new business and cultivate new client relationships, by utilizing her network of contacts and creating customized presentation materials to attract new clients.

27.   Prior to her official engagement, on May 9, 2016, Day executed a confidentiality agreement (the "Confidentiality Agreement") in which she acknowledged the confidential nature of the information to which she would have access as a consultant for Savor and by which she is bound to maintain the confidentiality of Savor's Confidential Information.

28.     In the Confidentiality Agreement, Day acknowledged that in connection with her role as consultant for Savor, she "ha[d] been and [would] be provided information regarding the financial, strategic, marketing and operations and all other segments of Savor's business." Day further acknowledged that such information was "non-public, confidential and proprietary in nature" and "the damage that could result to [Savor] if [the] information was disclosed to any third party." As such, Day expressly agreed that her employment with Savor necessarily made her privy to Savor's confidential and proprietary information and she explicitly agreed to maintain and preserve the confidentiality of Savor's trade secrets and other confidential information and use "commercially reasonable efforts to protect [it] against any loss or unauthorized disclosure or access." Day further acknowledged that Savor would be entitled to equitable relief in the event of Day's breach of the restrictive covenants contained in the Confidentiality Agreement.

29.     In July of 2016, Day also executed a Consulting Agreement (the "Consulting Agreement"). Under the Consulting Agreement, Day was obligated, upon the termination of the Consulting Agreement, to "return or destroy… all Savor Health Confidential Information." The unambiguous provision makes it clear that Day was not permitted to retain, without authorization, any of the Savor's Confidential Information, including Day's own work product based upon the Savor's proprietary processes and information.

30.     Savor's Confidential Information, as defined in the Consulting Agreement, includes, but is not limited to

> assets, facilities, operations, financial condition, marketing or business
> plans, prospects, strategies, research or product testing and development,
> reports, data, technical information or know how, processes, products,
> patents and other intellectual property, customers, suppliers, employees;
> and all reports analyses, notes or other information prepared by [Day], to
> the extent based, containing or reflecting any such confidential or

proprietary information.

31.     Under the Consulting Agreement, Day was obligated to maintain the confidentiality of the Confidential Information for no less than three years after the termination of the Consulting Agreement.

32.     Day was also expressly prohibited from competing with Savor during the term of the Consulting Agreement and for three years thereafter by agreeing

> not to personally engage in, or collaborate or advise on, any business activity, which competes with the business of Savor Health, at the time of expiration or termination of this agreement, including any business activity related to the provision of meals, counseling or nutrition information to cancer patients.  For the purposes of the Agreement, "Compete" means to engage in an activity in which [Day] personally contributes her knowledge as an employee or owner of, or advisor to, an entity engaged in the same business as Savor Health, at the time of the termination or expiration of this Agreement.

33.     On December 12, 2017, Day executed a further Employment Agreement ("Employment Agreement").

34.     Attachment B to the Employment Agreement, incorporated therein by reference, is the Employee Covenants Agreement ("Covenants Agreement"), which Day executed on February 5, 2018, in consideration of her continued compensation and employment with Savor. Day agreed that she would:

a.   not use it at any time (during or after her employment) for her personal benefit, for the benefit of any other person, Savor or its affiliates;

b.   not disclose it any time during or after her employment;

c.   safeguard it by all reasonable steps and abide by all policies and procedures;

d.   abide by all confidentiality agreements;

e.   return all materials containing or relating to Confidential Information,

together with all other Savor, client and customer property to the Savor when her employment with Savor terminates; and

    f.   provide Savor with all access codes, passcodes and administrator rights to any social media or other electronic accounts which she opened, handled to became involved with on Savor's behalf.

35.    Day was also expressly prohibited from competing with Savor or soliciting its customers or employees during the term of the Covenants Agreement and for twelve months thereafter.

36.    Lastly, Day acknowledged that, in the event of the breach of the Covenants Agreements, Savor would be entitled to injunctive relief, as well as attorneys' fees in any litigation arising out of the breach, by agreeing that, if Day:

> breach[es] or threaten[s] to breach any of the provisions of this Agreement, Savor would suffer irreparable harm and damages would be an inadequate remedy [and…] shall be entitled to temporary, preliminary and permanent injunctive or other equitable relief in any court of competent jurisdiction…The prevailing party in any such suit, arbitration mediation, action or other proceeding shall be entitled to the payment by the other party of the fees and expenses of the prevailing party's attorneys and experts, as well as its court costs, including the costs of any investigation related thereto, arising directly or indirectly out of any violation or threatened violation of any of the provisions of this Agreement.

**D.**    **Day's Termination for Poor Performance**

37.    During her employment with Savor, Day's performance was consistently unsatisfactory, her work product inferior and the use of her time inefficient.  Day repeatedly missed deadlines, delivered unusable work product, missed scheduled telephone calls with clients, and was frequently insubordinate.  On one occasion, Day's actions resulted in Savor's loss of a $250,000 grant.  The poor work product, wasted time, and missed deadlines placed an increased financial and time burden on Savor's employees, including the CEO.

38.    After providing multiple opportunities for improvement, it became necessary to

terminate Day's employment.  She was informed of her termination at 8:30 a.m. on August 1, 2019.  Savor founder and CEO Susan Bratton ("Bratton") advised Day that Day's termination was unfortunate, but because of Day's consistently unsatisfactory performance which threatened Savor's business success, Day would be let go.  Day was informed that she would receive her vested equity, COBRA and any remaining compensation due.  Moreover, Bratton committed to make every effort to make the transition out of Savor as easy as possible for Day by considering Day's request to allow her to remain on Savor's website until she secured new employment.

39.      Despite what appeared to be an amicable parting, Day immediately engaged in clandestine illegal activity aimed at the misappropriation of Savor's confidential and proprietary information and trade secrets.

**E.      Day Stole Savor's Confidential and Proprietary Information and Trade Secrets**

40.      Following Day's termination, she immediately embarked upon a calculated campaign to illegally access and download as much of Savor's Confidential Information as she could manage before her actions were discovered by Savor.  Even after being discovered and informed of the illegality of her actions, and despite her sworn representations to the contrary, Day continued to attempt to access Savor's systems, and obtain information to which she was not entitled.

41.      After Day was informed of her termination on August 1, 2019, Bratton advised her that she was no longer authorized to use any of Savor's programs, systems and databases and that she was expected to adhere to the covenants in her Agreements.  Day's passwords, among them her password to Savor's Google account, were changed to prevent unauthorized access.

42.      Nonetheless, at 8:35 a.m. on August 1, 2019, mere minutes after learning of her termination, Day used a two-factor identification to circumvent and reverse Savor's change of

her passwords.  She deceptively recovered access to Savor's Google account, archived the entire account and downloaded 11.6 gigabytes of Savor's information on to her personal device, including the entirety of Savor's documents, email, calendar and contacts folders.  A later inspection of the Google drive revealed that, in addition to downloading the information, Day emptied the Google Trash folder making it impossible to determine which or how many emails she deleted.  Day also edited and deleted Savor's proprietary documents on August 1, 2019. The inspection also revealed that Day manually selected which portions of the Google account she would download, therefore the archiving and the download were indisputably intentional and calculated.

43.     Of particular concern is that some of the information Day downloaded or accessed contains confidential medical PHI of patients with which clients have entrusted Savor in order to provide personalized nutrition interventions to their patients, as well as client-specific implementations of Savor's technology solution, all of which are specific and proprietary to each client, confidential and valuable to competitors.  In order to enable its clients to provide highly individualized solutions to each patient, Savor necessarily obtains from every patient detailed health information on the types and stages of their cancer diagnoses, other medical conditions, individual symptoms and more.  This information, which Day indisputably accessed and may now illegally possess, is protected from disclosure by federal law, including HIPAA, and its dissemination may expose Savor to liability, as well as seriously compromise Savor's credibility with its clients.

44.     In addition, within hours of her termination, Day accessed Savor's confidential information, including but not limited to:

              a.  Savor's weekly project status reports, which contain detailed information

about Savor's current existing projects and future launch plans which would be of great value to its competitors;

b.  Documents related to launching Ina® and the proprietary knowledge-based expert technology platform, both of which form the basis of Savor's IP, are critical to Savor's business, and are the result of painstaking and expensive development and testing;

c.  Client Testing Information which, if in the hands of competitors, would provide significant insight into the features/functions of Savor's personalized nutrition technology platform;

d.  Documentation concerning user and client support issue handling and escalation and crisis management processes and protocols, which contains Savor's proprietary technology and is also the result of significant investment of time, funds and expertise by Savor;

e.  User and Client Support Log, which, in addition to proprietary Savor information, contains confidential patient PHI protected under HIPAA;

f.  Roles and Activities Information relating to Savor's personnel needs; and

g.  All email communications with Savor's clients contained in its Google accounts.

45.    While downloading Savor's Confidential Information from its Google drive on August 1, 2019, Day was simultaneously accessing Savor's Jira and Confluence accounts. Savor maintains its technology roadmaps, features, functions and an ongoing log of fixes, improvement and additions to Savor's proprietary technology products in its Jira and Confluence accounts. This technological information was developed by Savor over a period of time and at great

expense and forms the basis of Savor's competitive advantage in the marketplace.  During her time at Savor, Day had no need to and did not routinely access the information stored in Jira and Confluence.  However, on the day of her termination, August 1, 2019, she accessed both accounts, illegally and without authorization.  Savor has been unable to determine what Day copied or downloaded from the Jira and Confluence accounts.  However, there can be no other reason for Day's clandestine access to these accounts except to steal Savor's highly valuable technology.

46.     Day's actions were discovered at 4:30 p.m. on August 1, 2019, after she had been meticulously accessing and downloading Savor's Confidential Information for eight hours, and her access was blocked.

**F.     Day Signs a False Certification and Continues to Access Savor's Confidential Information**

47.     Upon discovery of Day's shocking actions, Bratton confronted her via email, informing her that Savor was aware of her illegal actions, violations of her Agreements and deliberate breaches of Savor's online security measures.  Bratton demanded the return of all her devices for forensic examination and removal of Savor Confidential Information within 24 hours.  Day's response, asserting that she was merely logging her hours, was entirely untrue and misleading, given the fact that she had downloaded the entirety of Savor's 11.6 gigabyte Google drive, accessed multiple proprietary documents that had no impact on  her time records, accessed Jira and Confluence where all technology is contained, and accessed Salesforce contacts.

48.     After lengthy negotiations between Savor's and Day's attorneys concerning the return or destructions of Savor's Confidential Information in Day's possession, Day eventually agreed to permit Savor's forensic data security vendor to erase Savor's Confidential Information from Day's computer hard drive, and to remove Savor's Confidential Information from her

iCloud and iPhone.

49.     Day's and her attorney's dilatory tactics in negotiating Savor's access to Day's computer delayed this action by six weeks, from Day's termination on August 1, 2019 until her hard drive was eventually erased on September 9, 2019.  During that time, Day had unrestricted use and access to essentially all of Savor's proprietary business information.

50.     During the negotiations between Day and Savor, Day and her lawyer unilaterally identified what they decided and determined to be Savor's Confidential Information on Day's laptop, iCloud, and iPhone.  Accordingly, even assuming that information was deleted from Day's laptop, iCloud and iPhone, Savor has no assurance that all of its Confidential Information that is or was in Day's possession after her termination was, in fact, identified by Day and her lawyer.  Day's lawyer asserted in communications to Savor's counsel that they would make the determination as to what was Savor's property and, based on their unilateral determination, would be deleted from Day's laptop, iCloud, and iPhone.  There is reason to believe, based on Day's actions subsequent to her termination, including downloading 11.6 gigabytes of Savor Confidential Information and Day's continued unauthorized access to Savor's files from August 1 to 16, 2019,  that Day and her lawyer deemed Savor-owned Confidential Information to be Day's property simply because Day may have at one time worked on it.  This is in complete violation of her Agreements and restrictive covenants.

51.     Furthermore, because Day's hard drive was imaged prior to the deletion and not after, Savor has no meaningful way to compare what information on Day's hard drive was deleted and what information was not in order to determine whether or not Confidential Information deemed unlawfully by Day and her counsel to be Day's property remains on Day's computer, iCloud, and iPhone.

52.     In addition, Savor has not received satisfactory assurances from its forensic data security vendor or otherwise that Day did not copy and store Savor's Confidential Information elsewhere, such as on iCloud, a thumb drive, or another device, where it still remains in her possession.  Based on the foregoing, upon information and belief, after learning that her hard drive would be imaged and some files would be deleted, Day removed and concealed Savor's Confidential Information and continues to have illegal possession and use of the same.

53.     In connection with the purported erasure of Savor's documents from Day's devices, she executed a Certification of Full Contract Compliance, affirming that since her termination on August 1, 2019, she "complied and will continue to comply with all the provisions of the [Employee Covenants] Agreement" and that she took "all necessary steps to sign out and discontinue [her] access to any Savor Health online applications, including Dropbox."

54.     The affirmations made in the Certification are untrue.  Day continued to breach her agreements and improperly download information between August 1, 2019 and September 9, 2019 while negotiating with Savor about a potential amicable resolution.

55.     The analysis performed by Savor's data security vendor revealed a shocking amount of instances where Day accessed, viewed and edited Savor's proprietary documents for weeks after her termination on August 1, 2019.  Between August 1 and 16, 2019, Day accessed Savor's proprietary confidential documents over *eighty (80) times*, viewing and modifying documents such as client proposals, project timelines and milestones, technology testing results and documents related to Ina® implementation and onboarding.  There is no logical explanation for Day's meticulous and clandestine access to these documents except an intention to share them with competitors and leverage Savor's Confidential Information to Day's advantage.

56.     The analysis of Day's computer further revealed that she attempted to access Savor's Salesforce account's database of contacts on August 3, 8, 9, 12, 2019.  Day also successfully accessed Savor's Salesforce account via her mobile device on September 9, 2019, using credentials of a Savor employee.  After Savor discovered that Day could access the Salesforce account via a mobile device without a password (and only a token), her access was blocked and she was, therefore, unable to successfully access Salesforce any longer.  On October 3, 2019, Day again attempted access to her Savor email but was denied access on that date.

57.     Between August 1 and 16, 2019, Day also appears to have accessed Savor's confidential documents from Savor's Dropbox, which is the central depository of all of Savor's confidential and proprietary business documents.

58.     Because the representations in the Certification are patently false, Day's unrestricted access to all of Savor's Confidential Information for at least six weeks between her termination August 1, 2019 and the purported erasure of her hard drive on September 9, 2019, is of grave concern.  During this time, she could have disseminated Savor's Confidential Information to competitors, used it to her advantage in securing employment in violation of her restrictive covenants, or simply copied it to other devices unknown to Savor, where she continues to have illegal use and possession of the Confidential Information.

59.     Day further revealed her deceptions and attempted cover-up through Google searches.  As revealed by Savor's data security vendor following the analysis of Day's personal computer on September 9, 2019, between August 1 and 16, 2019, Day searched the internet for information on "why deleted files can be recovered and how you can prevent it" and "if you delete files can they still be found on your computer hard drive."  This research lends itself to no other explanation except that Day intended to remove and hide stolen Confidential Information

from her computer's hard drive.  Based on Day's actions and false statements, Savor has reason to believe that Day continues to have possession of some or all of Savor's Confidential Information which she claimed to have deleted on September 9, 2019.

60.     Day's internet search history also reveals that, around the time of her termination, she repeatedly searched for information, names, websites and contact information on Savor's competitors, including Clarify Health Solutions (a direct competitor in technology-based patient care), Prognos (a competitor in the healthcare data analytics sector, where Day searched for contact information of the CEO, Sandeep Bahn), Spreemo Health (a competitor providing technology based individualized radiology resources to patients), and Covera Health (a competitor, where Day searched for contact information of the Vice President for Program and Strategy Execution).  There can be no other logical explanation for such searches, except that Day intends to leverage the Confidential Information stolen from Savor into new opportunities with Savor's competitors, in direct violation of Day's Agreements with Savor and to great detriment to Savor's business.

**G.    Savor Has Suffered and Will Continue to Suffer Irreparable Harm as a Result of Day's Breaches of Her Agreements**

61.     Day's wrongdoing is exactly what the Agreements were meant to prevent.

62.     By virtue of her role with Savor, Day had substantial knowledge of Savor's clients and Savor's proprietary technology, confidential information and trade secrets.

63.     Day either already has or inevitably will breach her Agreements concerning Savor's Confidential Information by disclosing it to competitors of Savor and/or using Savor's Confidential Information for the benefit of competitors of Savor.

64.     To address this ongoing wrongdoing, which has and continues to threaten Savor with irreparable harm, Savor has commenced this litigation and seeks the injunctive relief detailed in its Complaint to redress the threat to Savor's business.

## FIRST CAUSE OF ACTION
### (Breach of Contract)

65.     Savor repeats and re-alleges the allegations contained in the preceding paragraphs as if fully set forth herein.

66.     Pursuant to the Confidentiality Agreement, Day agreed to prohibitions on disclosing and using Savor Confidential Information following the term of her employment and to return all Savor property and Confidential Information to Savor.

67.     Pursuant to the Consulting Agreement, Day agreed to prohibitions on disclosing Savor Confidential Information following the term of her employment and to return all Savor property and Confidential Information to Savor.

68.     Pursuant to the Employment Agreement, and the attached Employee Covenants Agreement, Day agreed to prohibitions on disclosing and using Savor Confidential Information following the term of her employment and to return all Savor property and Confidential Information to Savor.

69.     Day has breached the Confidentiality Agreement, the Consulting Agreement, and the Employee Covenants Agreement (collectively "Agreements") by, among other things:  (i) failing to certify the deletion or return of Savor's Confidential Information that she had improperly diverted to her personal devices; and, upon information and belief (ii) disclosing Savor confidential and proprietary information and trade secrets to competitors of Savor and/or using Savor Confidential Information for competitors' benefit.

70.     As a result of Day's breaches of her Agreements with Savor, Savor has suffered irreparable harm, including, but not limited to, misappropriation of its Confidential Information, harm to its reputation and goodwill, harm to its business and potential liability under federal law for disclosure of HIPAA-protected confidential medical information.

71.    As a result of Day's breaches, Savor seeks, among other remedies, injunctive relief, damages in an amount to be determined at trial and attorneys' fees and costs.

## SECOND CAUSE OF ACTION
### (Trade Secret Misappropriation Under 18 U.S.C. §§ 1836 *et seq.*)

72.    Savor repeats and re-alleges the allegations contained in the preceding paragraphs as if fully set forth herein.

73.    As set forth above in detail, Savor developed, is the owner of, and was, at all relevant times, in possession of the Savor trade secrets and Confidential Information.

74.    Savor's trade secrets and Confidential Information relate to and are used in or intended for use in, interstate or foreign commerce.

75.    Savor's trade secrets and Confidential Information is not generally known in the marketplace and would be of significant economic value to competitors in the health, nutrition and oncological care industries.  Savor's competitive advantage stems from the fact that its confidential and proprietary information is not generally known. Thus, as set forth above, Savor has taken and continues to take significant precautions to ensure that such information is secured and is not accessible to any individual or entity that can use such information to compete with Savor.

76.    Savor has made and continues to make efforts that are reasonable under the circumstances to secure the secrecy of its trade secrets and Confidential Information, including, among others, requiring persons who access it, such as Day, to execute the confidentiality agreement described above.

77.    Day has misappropriated, continues to misappropriate, and/or inevitably will misappropriate Savor trade secrets and Confidential Information by disclosing and using it for the benefit of Savor's competitors and to solicit Savor's customers throughout the United States,

including in New York, while knowing that she has a duty, both contractually and under common law, to maintain its secrecy, refrain from its use and turn over any of Savor's trade secrets in her possession.

78.     Unless injunctive relief is entered, Savor will suffer immediate and irreparable harm in the form of lost business and customer relationships, which took time and money to cultivate, the loss of goodwill and business reputation, the misappropriation and use of the Savor confidential and proprietary information and trade secrets and other recognized injuries.

79.     Savor has no adequate remedy at law for its present and threatened injuries.

80.     As a result of Day's wrongful conduct, Savor seeks:  (i) injunctive relief; (iii) compensatory and statutory damages in an amount to be determined at trial; (iii) exemplary damages as set forth in 18 U.S.C. § 1836 (b)(3)(c); and (iv) all reasonable attorneys' fees and costs.

## THIRD CAUSE OF ACTION
### (Misappropriation of Confidential and Proprietary Information and Trade Secrets)

81.     Savor repeats and re-alleges the allegations contained in the preceding paragraphs as if fully set forth herein.

82.     Savor spent significant time and effort and expended substantial resources to create and maintain the secrecy of Savor trade secrets and Confidential Information.  This information was developed through years of painstaking research, development, expense, and cultivation of customer relationships that give Savor a competitive advantage in the marketplace.

83.     Savor took significant precautionary measures to secure and preserve the Savor trade secrets and Confidential Information, by, among other things, restricting access to it and disclosing it to only those persons who need and require it to perform their duties for Savor and requiring persons who access them, such as Day, to execute confidentiality agreements such as

those at issue.

84.     By virtue of her position within Savor, the Day had access to the Confidential Information.

85.     During and after her employment with Savor, Day acted in bad faith and misappropriated a commercial advantage belonging to Savor by using and exploiting Savor trade secrets and Confidential Information.

86.     Day intentionally misappropriated Savor's trade secrets and Confidential Information and is using or may use it to continue to solicit Savor's customers from Savor to competitors at Savor' expense.

87.     Unless injunctive relief is entered, Savor will suffer irreparable harm, including, but not limited to, misappropriation of its trade secrets and confidential information, loss of employees, clients, business opportunities, and harm to its reputation and goodwill.

88.     Savor has no adequate remedy at law for its present and threatened injuries.

89.     As a result of Day's wrongful conduct, Savor seeks, among other remedies, injunctive relief and damages against Day in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION
### (Breach of Duty of Loyalty)

90.     Savor repeats and re-alleges the allegations contained in the preceding paragraphs as if fully set forth herein.

91.     As an employee of Savor, Day owed a common law duty of loyalty to Savor and was required to act in utmost good faith in the furtherance and advancement of Savor' interests, including maintaining the confidentiality of the Savor confidential and proprietary information and trade secrets, which Savor entrusted to Day.

92.     These obligations continued after Day's employment with Savor was terminated.

93.     Day failed to act in the best interest of Savor and materially breached her duty of loyalty to Savor, including by:

a.   Misappropriating and wrongfully retaining Savor's trade secrets and Confidential Information, including by downloading Savor confidential and proprietary information and trade secrets to her personal devices; and/or

b.   Disclosing and/or using Savor' Confidential Information and trade secrets; and/or

c.   Otherwise acting against the interests of Savor, including, upon information and belief, intending to share Savor's Confidential Information and trade secrets with Savor competitors.

94.     Day has materially breached or intends to breach her common law duty of loyalty to Savor by using Savor confidential and proprietary information and trade secrets for her own benefit and for the benefit of current or potential subsequent employers and Savor competitors.

95.     Savor has suffered and will continue to suffer irreparable injury in addition to monetary damages as a direct and proximate result of Day's breach of her duty of loyalty to Savor.

96.     Unless restrained by this Court, Day will continue her unlawful actions and Savor will continue to be irreparably harmed.

97.     Savor has no adequate remedy at law for its present and threatened injuries.

98.     As a result of Day's wrongful conduct, Savor seeks injunctive relief and compensatory damages against Day in an amount to be determined at trial.

**FIFTH CAUSE OF ACTION**
**(Violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 *et seq.*)**

99.     Savor repeats and re-alleges the allegations contained in the preceding paragraphs as if fully set forth herein.

100.    The Savor computers on which were stored the data accessed by Day following

her termination (the "Computers") were utilized in interstate commerce and are protected computers under 18 U.S.C. § 1030(e)(2).

101.   As set forth above, Day accessed the Computers following her terminations, and downloaded confidential Savor Confidential Information from the Computers onto to her personal devices.  In doing so, Day exceeded authorized access to the Computers and obtained information of value therefrom.

102.   Upon information and belief, Day knowingly and intentionally and with intent to defraud, exceeded authorized access to the Computers and obtained information of value therefrom in furtherance of their intent to defraud, as set forth above, in violation of 18 U.S.C. § 1030(a)(2)(c); 18 U.S.C. § 1030 (a)(4); 18 U.S.C. 1030 § (a)(5)(B); 18 U.S.C. § 1030 (a)(5)(C) and/or 18 U.S.C. § 1030 (c)(4)(A)(I).

103.   Savor has been damaged by reason of the foregoing violations in excess of $5,000.00.

104.   Day's unlawful access to the Computers has caused Savor irreparable injury.

105.   Day is entitled to compensatory damages pursuant to 18 U.S.C. § 1030 (g).

### SIXTH CAUSE OF ACTION
**(Violation of the Stored Communications Act, 18 U.S.C. § 2701 *et seq.*)**

106.   Savor repeats and re-alleges the allegations contained in the preceding paragraphs as if fully set forth herein.

107.   Title 18, United States Code, Section 2701 provides that intentionally accessing without authorization a facility through which an electronic communication service is provided; or intentionally exceeding an authorization to access that facility and obtaining, altering or preventing access to a wire or electronic communication while it is in electronic storage in such system is unlawful and shall be punished by a fine or imprisonment or both.

108.    Day's actions, including but not limited to downloading Savor Confidential Information to her personal devices, constitute violations of the foregoing statute.

109.    On account of Day's actions as alleged in this Complaint, Savor has sustained losses and damages, including but not limited to the cost of responding to Day's offenses and conducting damage assessment, and Day is liable to Savor for such damages, as well as such preliminary and other equitable or declaratory relief as may be appropriate, pursuant to 18 U.S.C. § 2707(b).

110.    As Day's actions were willful or intentional, therefore Savor is entitled to punitive damages, the costs of the action, together with reasonable attorney fees determined by the court against Day, pursuant to 18 U.S.C. § 2707(c).

**SEVENTH CAUSE OF ACTION**
**(Inevitable Disclosure)**

111.    Savor repeats and re-alleges the allegations contained in the preceding paragraphs as if fully set forth herein.

112.    Day was granted access to the Confidential Information, which was developed either independently by Savor or by Day during the course of her employment with Savor.  Day agreed not to disclose or use the Confidential Information except to advance the interests of Savor.

113.    By virtue of her conduct described herein, Day either already has or inevitably will breach the confidentiality provisions of her Agreements concerning the Confidential Information by disclosing it to competitors of Savor and/or or using the Confidential Information for the benefit of competitors of Savor.

114.    Savor has suffered and will continue to suffer irreparable injury in addition to monetary damages as a direct and proximate result of the conduct of Day which cannot be

reasonably ascertained.

115.    Savor has no adequate remedy at law for its present and threatened injuries.

116.    As a result of Day's wrongful conduct, Savor seeks: (i) temporary and preliminary relief against Day; and (ii) among other remedies, injunctive relief and damages against Day in an amount to be determined at trial.

## EIGHTH CAUSE OF ACTION
### (Conversion)

117.    Savor repeats and re-alleges the allegations contained in the preceding paragraphs as if fully set forth herein.

118.    Savor is the owner of the Confidential Information.

119.    Day misappropriated certain of the Confidential Information without the consent of Savor, and has not returned the same to Savor, despite due demand.

120.    By these acts, Day has wrongfully asserted dominion over Savor' physical and intellectual property, including the Confidential Information.

121.    As a direct and proximate result, Savor has suffered damages in an amount to be determined at trial.

122.    Day's willful and intentional acts entitle Savor to punitive or exemplary damages under applicable law.

## NINTH CAUSE OF ACTION
### (Permanent Injunction)

123.    Savor repeats and re-alleges the allegations contained in the preceding paragraphs as if fully set forth herein.

124.    As set forth above, Day has violated, is actively violating or is planning to violate her Agreements.

125.    Upon information and belief, Day is working with at or attempting to work with

least one competitor of Savor despite being apprised of her obligations under her Agreements, including the non-disclosure, non-competition, and non-solicitation obligations contained therein.

126.   Day has disclosed or will inevitably disclose the Confidential Information and trade secrets to compete with Savor in the marketplace.

127.   Unless injunctive relief is entered, Savor will suffer irreparable harm including, but not limited to, misappropriation of its Confidential Information and trade secrets, loss of customers, business opportunities, and harm to its reputation and goodwill.

128.   Savor has no adequate remedy at law for its present and threatened injuries.

129.   Accordingly, Savor is entitled to permanent injunctive relief enjoining and restraining Day from disclosing or using for the benefit of any person, corporation or entity, including any competitor of Savor, or for herself, any and all files, trade secrets, or other confidential information concerning the business of Savor, including, but not limited to, information pertaining to Savor's clients, services, products, earnings, finances, operations, methods or other activities.

130.   Savor is additionally entitled to permanent injunctive relief enjoining and restraining Day from becoming an employee of or consultant to any other principal competitor of Savor, including for any business conducting business activity related to the provision of meals, counseling or nutrition information to cancer patients, in substantially the same function as Day's employment with Savor, prior to August 1, 2021, *i.e.*, three (3) years from Day's August 1, 2019 termination from Savor

131.   Savor is further entitled to an Order directing Day to return to Savor all Savor property and copies of any documents within her possession, custody or control which contain

Savor confidential and proprietary information and trade secrets, as well as all computers and devices containing Savor property.

## **PRAYER FOR RELIEF**

WHEREFORE, Savor demands the following relief:

1. On the First Cause of Action for Day's breaches of the Agreements, judgment in Savor's favor in an amount to be determined at trial, and interest, costs and attorneys' fees;

2. On the Second Cause of Action for violation of 18 U.S.C. §§ 1836, *et seq.*, judgment in Savor's favor, compensatory and exemplary damages in an amount to be determined at trial and interest, costs and attorneys' fees;

3. On the Third Cause of Action for misappropriation of confidential information and trade secrets, judgment in Savor's favor, damages in an amount to be determined at trial, injunctive relief and interest, costs and attorneys' fees;

4. On the Fourth Cause of Action for breach of the duty of loyalty, judgment in Savor's favor, injunctive relief, damages in an amount to be determined at trial and interest, costs and attorneys' fees;

5. On the Fifth Cause of Action for Violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 *et seq.*, judgment in Savor's favor, and compensatory damages pursuant to 18 U.S.C. § 1030 (g);

6. On the Sixth Cause of Action for violation of the Stored Wire and Electronic Communication and Transactional Records Access Act, 18 U.S.C. § 2701 *et seq.*), judgment in Savor's favor, damages pursuant to 18 U.S.C. § 2700 *et seq*, punitive damages, costs and attorneys' fees;

7. On the Seventh Cause of Action for inevitable disclosure, judgment in Savor's favor, damages in an amount to be determined at trial, injunctive relief and interest, costs and attorneys' fees;

8. On the Eighth Cause of Action for conversion, judgment in Savor's favor, damages in an amount to be determined at trial, and punitive or exemplary damages under applicable law;

9. On the Ninth Cause of Action for permanent injunction, an order temporarily, preliminarily and permanently enjoining and restraining Day and her employers, agents, affiliates, and all those acting in concert with her or on her behalf or by her direction from directly or indirectly from:

   a. Disclosing or using for the benefit of any person, corporation or entity, including any competitor of Savor, or for herself, any and all files, trade secrets, or other confidential information concerning the business of Savor, including, but not limited to, information pertaining to Savor's clients, services, products, earnings, finances, operations, methods or other activities

    b. Becoming an employee of or consultant to any other principal competitor of Savor, including for any business conducting business activity related to providing personalized nutrition solutions to people with chronic medical conditions, in substantially the same function as Day's employment with Savor, prior to August 1, 2020, *i.e.*, twelve (12) months from Day's August 1, 2019 termination from Savor;

    c. Soliciting or attempting to solicit any person, company, entity or firm who is or was a customer or client of Savor or any of its subsidiaries, for the purposes of marketing, selling, or providing services or products that are competitive with or available from Savor or interfering with Savor's actual or prospective relationships with those customers, clients, or prospects; and soliciting any employee or independent contractor of Savor prior to August 1, 2020, *i.e.*, twelve (12) months from Day's August 1, 2019 termination from Savor;

    a. Maintaining control over any Savor files, trade secrets, or other confidential information concerning the business of Savor, including, but not limited to, information pertaining to Savor's clients, services, products, earnings, finances, operations, methods or other activities, as well as any computers and devices containing such files, and requiring Day to return or turn over such files, computers and devices to Savor; and

10. Such other and further relief as the Court deems just, proper, and equitable.


Dated: October 23, 2019            Respectfully submitted,

                                     REED SMITH LLP

                                     */s/ Steven Cooper*
                                     Steven Cooper
                                     Nana Boyer
                                     Jeremy Berman
                                     REED SMITH LLP
                                     599 Lexington Avenue
                                     New York, NY  10022-7650
                                     Telephone: (212) 521 5400
                                     Facsimile: (212) 521 5450

                                     *Counsel for Plaintiff Savor Health, LLC*