USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 03/29/2022

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SAVOR HEALTH, LLC,

                Plaintiff/Counterclaim Defendant,

          v.

ANDREA DAY,

                Defendant/Counterclaim Plaintiff

---

ANDREA DAY,

                Third Party Plaintiff,

          v.

SUSAN BRATTON and JOHN/JANE DOES
#1-9,

                Third Party Defendants

No. 19-cv-9798 (RA)

<u>OPINION & ORDER</u>

---

RONNIE ABRAMS, United States District Judge:

This action was brought by Savor Health, LLC ("Savor") against its former employee, Andrea Day. Savor alleges that after being terminated, Day misappropriated Savor's trade secrets, breached her contract with Savor, violated the Computer Fraud and Abuse Act and Stored Communications Act, and committed various other torts. Day responded by filing counterclaims against Savor and third-party claims against Susan Bratton, Savor's CEO. Day accuses Savor and Bratton of violating the Fair Labor Standards Act (the "FLSA") and the New York Labor Law (the "NYLL"), as well as committing common-law fraud. Before the Court is Savor and Bratton's motion for judgment on the pleadings on certain of Day's claims. For the reasons that follow, the

motion is granted with the exception of Day's counterclaims for retaliation in violation of the FLSA and the NYLL.  The Court will, however, grant Day leave to amend.

## FACTUAL AND PROCEDURAL BACKGROUND

Because this motion was filed by Savor and Bratton, the Court draws the following facts from Day's Amended Answer, Counterclaims, and Third-Party Complaint, assuming them to be true.  *See Gabilly v. City of New York*, No. 19-cv-11884 (RA), 2021 WL 3667981, at *2 (S.D.N.Y. Aug. 17, 2021).[1]  The Court also relies on documents that Day's pleading incorporates by reference or that are integral to that pleading: namely, the consulting agreement between Day and Savor, the employment agreement between Day and Savor, and Day's termination letter.  *See Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 305 (2d Cir. 2021).[2]

Day is a former employee of Savor, a company that provides nutrition solutions to cancer patients.  Bratton is Savor's founder and CEO, who "controls every aspect of the company, including managing its cashflow."  Third-Party Complaint ("TPC") ¶ 4; *see* Counterclaims ("CC") ¶ 35 (alleging that Bratton "keeps a gimlet eye on the Savor cash flow, payments and payroll deductions").  According to Day, Bratton had "direct control" over Day, including the ability to "hire and fire" her, "determine [her] rate and method of pay," "determine [her] work schedules," and "direct the method in which work was performed."  TPC ¶ 6.  Day asserts that Bratton had "been deeply disturbed about Savor's lackluster ability to raise funds and make sales."  *Id.* ¶ 4.

Day entered into a consulting agreement with Savor on July 26, 2016; about a year and a half later, Savor offered Day a job as Vice President of Business Development.  CC ¶ 15; Bratton

---

[1] As none of Savor's claims against Day are implicated in this motion, the Court does not discuss the factual allegations that relate solely to those claims.

[2] The Court may not consider emails from Bratton to Day that Day attaches to her motion, which were neither relied on in nor integral to Day's pleading.

Aff. Ex. C ("Employment Agreement") at 1.  Day signed an employment agreement on December 12, 2017, which superseded the consulting agreement.  CC ¶ 15; Employment Agreement at 1. The agreement stated that Day would report to Bratton or to Bratton's designee.  Employment Agreement at 1.  It also promised that Savor would pay Day all money due to her under the consulting agreement by December 31, 2017.  CC ¶ 22; *see* Employment Agreement at 1 (providing that payment for Day's "work performed prior to November 1, 2017 . . . shall be payable on or before December 31, 2017").  As to compensation, Day would "be paid $11.00 per hour based upon a 40 hour work week, plus $64.00 per hour for work allocated to new business for such week and plus $114.00 per hour for work allocated to non-new business for such week less $11.00 multiplied by the amount of hours allocated to neither such category for such week."  Employment Agreement at 1.  Day was not expected to work "more than 40 hours in any given week."  *Id.*  Her compensation could also include commissions, as specified in an attached commission plan.  *See id.* at 4.  The agreement further represented that Day was "an exempt employee under applicable law and therefore [would] not be eligible to receive any overtime pay."  *Id.* at 1.

Day worked for Savor for about two more years until she was terminated the morning of August 1, 2019.  CC ¶¶ 31, 33.  According to Day, Bratton explained that she was being terminated because "Savor did not have enough money to pay her."  *Id.* ¶ 33.  Shortly thereafter, Bratton emailed Day a letter back-dated July 31, 2019, which stated that Day would "not be entitled to any other compensation, employee benefits, bonuses, allowance, severance, contingent compensation or any other thing or act of value from Savor."  *Id.* ¶ 34.  Day contends that Bratton "knew this statement was false."  *Id.* ¶ 35.  After receiving the letter, Day called Bratton and told her that she was in fact owed unpaid wages and unreimbursed expenses; Bratton allegedly replied, "Oh, I don't think so."  *Id.* ¶ 36.  Day told Bratton that she would complete and submit timesheets and expense

records to confirm the money she was owed.  *Id.*  She worked on her time entries until approximately 5:00 p.m., when she lost access to her work email.  *Id.* ¶ 40.  Not only did Bratton allegedly deny Day continued access to complete the timesheets, but she also accused Day of improperly downloading Savor's proprietary documents after her termination.  *Id.* ¶¶ 41-42.  Bratton continued to make these accusations in the days following Day's termination.  *Id.* ¶ 44.

Day eventually completed her timesheets, which purportedly showed that "Savor still owed Day $69,944 in hourly wages, $4,000 in commissions and $829.63 in unreimbursed expenses." *Id.* ¶ 45.  She submitted these records to Savor's counsel for payment on August 14, 2019.  *Id.* Savor failed to pay Day those funds, "despite due demand therefor, and its promise to do so in the employment agreement." *Id.* ¶ 47.  Day appears to allege that these funds were earned during both Day's consultancy and her employment, as she asserts both that "Savor has failed and refused to pay Day the sums still owed to her under the consulting agreement" and that "Savor has also failed and refused to pay Day the wages, commissions, and expenses it owes to her pursuant to the employment agreement for the period Day was an employee of Savor."  *Id.* ¶¶ 23, 24.  Day characterizes Savor and Bratton's refusal to pay Day as "willful."  *Id.* ¶ 27; TPC ¶¶ 7, 21, 24.

Day also alleges that Savor and Bratton illegally deducted money from her wages under the guise of deducting health insurance premiums in two separate ways.  First, when Bratton offered to make Day a Savor employee, she "told Day she would have to pay the family plan coverage premium." CC ¶ 55.  Day agreed, as having a family health plan was important to her. *Id.* ¶ 54.  But Bratton, as the administrator of Savor's insurance program, allegedly "deducted $1,219.08 from Day's paychecks in excess of 2018 required health insurance premiums during the 25 pay periods covering December 16, 2017 through December 31, 2018." *Id.* ¶¶ 56, 58.  Day asserts that Savor "also deducted health insurance premiums from Day's paychecks for each pay

period covering January 1, 2019 through July 31, 2019," *id.* ¶ 59, but does not appear to allege any specific damages as a result of these deductions.

Second, following Day's termination, Bratton allegedly informed Day that if she wanted to keep her family health insurance plan, she would have to pay "[New York] Continuation Coverage premiums" of $2,548.64 per month.  *Id.* ¶ 60.  According to Day, "[b]y demanding that Day pay the August 2019 premium, and subsequent premiums, even though Savor owed wages, commissions and expenses to Day, Savor [through Bratton] was, in effect, making illegal deductions from Day's wages."  *Id.* ¶ 65.  The formal notice of termination, however, stated that Day and her dependents "*may elect* to continue health coverage at [her] own expense in accordance with" New York's COBRA scheme.  Connolly Aff. Ex. 2 (emphasis added); *see also* Answer ¶ 38 (Day "admit[ting] that Bratton told Day that she would receive her . . . COBRA rights").  Day paid the continuation coverage premiums from August 2019 through December 2019.  CC ¶ 68.  She alleges that she did so "under duress," as Bratton was "threatening her with false accusations of violating the law," "denying that any compensation was owed to" Day, and "making it clear that if Day did not pay those premiums, Savor/Bratton would cancel Day's family plan coverage."  *Id.* ¶ 66.  Day claims that as a result of these two instances of unlawful pay deductions, she has been damaged "in the sum of the overbilled, improper deduction of $1,219.08, plus the premiums of August 2019 through December 2019."  *Id.* ¶ 69.

On September 30, 2019, Day filed a complaint filed with the New York Department of Labor ("DOL") regarding Savor's alleged violation of wage and hour laws.  *Id.* ¶ 71.  Day asserts that this action constitutes retaliation against Day for her verbal wage complaints to Bratton and her DOL complaint.  *Id.* ¶¶ 71-74 (alleging that Bratton "mount[ed] a three month campaign of threats and harassment, accusing Day of stealing information and wrongfully accessing Savor's

computers—all in a bid to scare Day off from pursuing the sums owed to her" and that "[i]n response to the DOL complaint, Bratton caused Savor to file the underlying meritless Complaint"). She also claims that Bratton was personally responsible for this suit.  TPC ¶ 12.  According to Day, Savor's lawsuit has harmed her reputation and her ability to obtain future employment by falsely accusing her of illegal conduct.  CC ¶ 75.

Finally, Day alleges that Savor "paid Day less frequently than monthly"; failed to provide her with a notice describing her hourly regular rates of pay and acknowledgment of such notice; and failed to provide her with a wage statement accompanying each payment with statutorily required information.  *Id.* ¶¶ 51, 80-83.

Day claims that Savor and Bratton violated the FLSA and the NYLL by failing to compensate her for all hours worked; by making illegal deductions from her pay; by failing to timely pay her; by failing to provide her with wage notices and wage statements; and by retaliating against her for complaining about these violations.  She also raises claims for fraud against both Savor and Bratton; claims for breach of contract and account stated against Savor; and a claim for shareholder liability against Bratton.[3]  Savor and Bratton (hereinafter referred to as "Savor" unless otherwise noted) moved for judgment on the pleadings as to several of Day's counterclaims and third-party claims.  Savor seeks dismissal of all FLSA and NYLL claims against Bratton on the ground that Bratton is not Day's employer within the meaning of those statutes.  Savor also seeks dismissal on the merits of Day's FLSA and NYLL minimum wage claims; Day's FLSA and NYLL retaliation claims; Day's fraud claims against Savor and Bratton; and Day's shareholder liability claim against Bratton.

---

[3] This final claim is also brought against John and Jane Does 1-9, "who are the unknown persons who are the remaining ten largest shareholders/owner[s] of membership interests in Savor."  TPC ¶ 3.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed . . . a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "When a defendant seeks dismissal of a complaint via a Rule 12(c) motion for judgment on the pleadings, courts . . . apply the same standard as they would to a Rule 12(b)(6) motion, accepting as true all well-pleaded allegations contained in the complaint"—or, in this case, in Day's counterclaims and third-party complaint—"and determining whether [that pleading] states a plausible claim to relief." *Gabilly*, 2021 WL 3667981, at *2. "A claim has facial plausibility when the [claimant] pleads factual content that allows the court to draw the reasonable inference that the [opposing party] is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).[4] Claims that are merely "conceivable" or "consistent with" liability are insufficient to survive dismissal. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545, 570 (2007). Although the Court must "draw all reasonable inferences in the non-movant's favor," *Lively*, 6 F.4th at 304, it need not credit "[t]hreadbare recitals of the elements of the cause of action, supported by mere conclusory statements," *Iqbal*, 556 U.S. at 678.

## DISCUSSION

I.     **Day Has Failed to Plead Either Enterprise Coverage or Individual Coverage Under the FLSA and Thus Has Failed to Plead FLSA Minimum Wage Claims (Counterclaim 3 and Third-Party Claim 1)**

"[T]he FLSA's minimum wage and overtime requirements provide coverage to those 'employees who . . . [are] engaged in commerce or in the production of goods for commerce, or [are] employed in an enterprise engaged in commerce or in the production of goods for commerce.'" *Jacobs v. N.Y. Foundling Hosp.*, 577 F.3d 93, 96 (2d Cir. 2009) (per curiam) (alterations in original) (quoting 29 U.S.C. § 206(a)). "The two categories are commonly referred

---

[4] Unless otherwise noted, case quotations omit all internal citations, quotations, footnotes, and alterations.

to as 'individual' and 'enterprise' coverage, respectively." *Id.* Day has failed to plead facts sufficient to allege either that she personally engaged in interstate commerce such that she is individually covered or that Savor is an enterprise under the FLSA.

"To plead that he is subject to individual coverage, a plaintiff must allege that he was personally engaged in commerce"—defined in the FLSA as interstate commerce—"or the production of goods for commerce." *Kaplan v. Wings of Hope Residence, Inc.*, No. 18-cv-02972 (ADS) (AKT), 2018 WL 6437069, at *5 (E.D.N.Y. Dec. 7, 2018). "[A] substantial part of an employee's work must be connected to interstate commerce." *Id.* at *6. "In order to determine if individual coverage of the FLSA applies, courts must examine the employment actions of each employee asserting a claim." *Padilla v. Manlapaz*, 643 F. Supp. 2d 298, 300 (E.D.N.Y. 2009). Day's only allegation regarding her individual coverage is that "[a]t all relevant times hereto, [she] was engaged in interstate 'commerce' within the meaning of the FLSA." CC ¶ 19. This "threadbare assertion [that] is not supported by any factual allegations" is insufficient to infer that any, much less a substantial amount of, Day's work was connected to interstate commerce. *Larez v. Hortus NYC Corp.*, No. 20-cv-0498 (RRM) (RLM), 2021 WL 1209715, at *3 (E.D.N.Y. Mar. 30, 2021); *see id.* (dismissing an FLSA claim when the complaint "contain[ed] no allegations that [the plaintiff's] work involved or related to the movement of persons or things between states"); *Jones v. SCO Fam. of Servs.*, 202 F. Supp. 3d 345, 351 (S.D.N.Y. 2016) (dismissing an FLSA claim when an individual coverage allegation "merely echoe[d] the statutory language to state legal conclusions" and where the plaintiff provided "no information about the frequency" of her interstate contacts). *But see Ying Shun Zhao v. Sunny 39 Hotel Corp.*, No. 14-cv-1847 (JG) (MDG), 2015 WL 5307716, at *5 (E.D.N.Y. Sept. 10, 2015) (finding that individual coverage was sufficiently pleaded from the allegation that "plaintiffs were employees engaged in commerce

and/or in the production of goods for commerce, as defined in the FLSA and its implementing regulations").To plead enterprise coverage, an employee must allege both that her employer engaged in interstate commerce or in the production of goods for interstate commerce and that the employer's annual gross volume of sales or business done is not less than $500,000.  29 U.S.C. § 203(s)(1)(A)(i)-(ii).  Day conclusorily alleges that Savor is an enterprise that engages in interstate commerce, CC ¶¶ 16, 18—but she never alleges Savor had $500,000 in sales or business or otherwise alleges facts from which the Court might reasonably draw such an inference.  Indeed, she denies that Savor has "ever been able to raise sufficient funds, through sales or otherwise[,] to operate with sufficient cash flow."  Answer ¶ 19.  Day has therefore failed to allege that Savor is an enterprise under the FLSA.  *See Gonzales v. Gan Israel Pre-Sch.*, No. 12-cv-6304 (MKB), 2014 WL 1011070, at *1, *7-8 (E.D.N.Y. Mar. 14, 2014) ("Most cases in this Circuit that discuss this issue require that a plaintiff plead the specific fact that the defendant did $500,000.00 or more in annual gross business."); *accord Malloy v. Ass'n of State & Territorial Solid Waste Mgmt. Offs.*, 955 F. Supp. 2d 50, 56 (D.D.C. 2013) (dismissing an FLSA complaint when it "offer[ed] not even a bare allegation that the defendant's annual gross volume of sales made or business done is not less than $500,000").

Accordingly, the Court dismisses Day's FLSA minimum wage claims.[5]

## II.    Day Has Plausibly Pleaded that Bratton Was Day's Employer

Savor argues that Day's statutory claims against Bratton fail because Day has failed to plead that Bratton was her employer.  The Court disagrees.  Because the "NYLL's definition of

---

[5] There is a split among district courts in this Circuit as to whether the coverage requirements of the FLSA's wage and overtime provisions are jurisdictional or are merely elements that a plaintiff must establish to prove liability.  The Court agrees with the reasoning of cases concluding that these requirements are not jurisdictional.  *See, e.g.*, *Monterossa v. Martinez Rest. Corp.*, No. 11-cv-3689 (JMF), 2012 WL 3890212, at *3 (S.D.N.Y. Sept. 7, 2012); *Gaughan v. Rubenstein*, 261 F. Supp. 3d 390, 422 (S.D.N.Y. 2017) ("[T]he prevailing view in this Circuit is that the question of whether enterprise coverage applies goes to the merits of an FLSA cause of action and is not jurisdictional."); *Rocha v. Bakhter Afghan Halal Kababs, Inc.*, 44 F. Supp. 3d 337, 344 (E.D.N.Y. 2014).

'employer' is nearly identical to that of the FLSA, and the analysis of the employment relationship under both statutes is based on the same factors," the Court draws on FLSA caselaw in the following analysis. *Imbarrato v. Banta Mgmt. Servs., Inc.*, No. 18-cv-5422 (NSR), 2020 WL 1330744, at *3 (S.D.N.Y. Mar. 20, 2020).

For an individual to qualify as an employer, that individual "must possess control over a company's actual operations in a manner that relates to a plaintiff's employment." *Irizarry v. Catsimatidis*, 722 F.3d 99, 109 (2d Cir. 2013). "Evidence that an individual is an owner or officer of a company . . . is insufficient to demonstrate 'employer' status." *Id.* Instead, a four-factor "economic reality" test determines the employment relationship between a worker and an alleged employer. That test considers whether the alleged employer "(1) had the power to hire and fire the employee[], (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Carter v. Dutchess Community College*, 735 F.2d 8, 12 (2d Cir. 1984). "Mere boilerplate allegations that an individual meets the various prongs of the economic reality test" are "insufficient" to survive dismissal. *Diaz v. Consortium for Worker Educ., Inc.*, No. 10-cv-01848 (LAP), 2010 WL 3910280, at *4 (S.D.N.Y. Sept. 28, 2010). Rather, a party must "supplement those statements with factual allegations related to the nature and degree of the [individual defendant's] operational control over the terms and conditions of [her] employment." *Imbarrato*, 2020 WL 1330744, at *4.

Day asserts that Bratton possessed the ability to "hire and fire," to "determine rate and method of pay," to "determine work schedules," and to "direct the method in which work was performed." TPC ¶ 6. This language is essentially a recitation of the *Carter* factors. However, there are other assertions in Day's pleading that add factual content to these allegations. Day

contends that Bratton had "direct control" over Day and her "day-to-day operations." *Id.* ¶ 5; *see Marasco v. Am. Expediting Co., Inc.*, No. 16-cv-0232 (PKC) (JO), 2018 WL 2074154, at *2 (E.D.N.Y. Jan. 12, 2018) (concluding that while similar phrasing was "undoubtedly formulaic," it "nevertheless explicitly allege[d] [an individual's] control over the terms and conditions of [plaintiff's] employment").   More specifically, Day's employment agreement provided that she would report to Bratton or Bratton's designee, suggesting that Bratton directed the method in which Day performed her work.   Employment Agreement at 1.   Day also claims that Bratton "controls every aspect of" Savor, "including managing its cashflow."   TPC ¶ 4.   Managing a company's cashflow presumably includes the power to determine the rate and method of pay for employees.   Regarding hiring and firing power, although Day's argument that Bratton had the power to hire and fire her because Bratton is the one who signed her employment agreement is unpersuasive,[6] Bratton's statement to Day upon firing her is more compelling, as she allegedly explained that "*she* had to terminate Day's employment because Savor did not have enough money."   CC ¶ 33 (emphasis added).   Moreover, Bratton's alleged response of "Oh, I don't think so" when Day claimed that she was owed money suggests that Bratton had the power to make decisions on behalf of Savor regarding wages owed to employees.   CC ¶ 36.   Finally, Day states that Bratton "closely monitor[ed]" and kept "a gimlet eye" on Savor's finances, cash flow, payments, and payroll deductions.   CC ¶¶ 35, 62.   Although monitoring finances is not necessarily equivalent to having control over those finances, it seems clear that Day means to allege that Bratton had full control over how those funds were used, including whether they would be used to

---

[6] To quote Day, "obviously, a company has to act through *somebody*" to do anything, such as executing an employment agreement, that requires a signature. Opp. MOL at 20.  That does not mean, however, that the individual signing such a document on behalf of the company necessarily has the power to make the decision described in that document on behalf of the company.  *See Kraiem v. JonesTrading Institutional Servs. LLC*, No. 19-cv-05160 (ALC), 2021 WL 2134818, at *4 (S.D.N.Y. May 26, 2021) (concluding that allegations that a specific individual "signed [the plaintiff's] employment contract and termination letter" only made "it possible, not plausible, that [that individual] personally had the power to hire and fire [the plaintiff]").

pay Day.  Indeed, Day claims that Bratton is the one who illicitly deducted excessive amounts from her paychecks in the guise of health insurance premiums, which is one of the employment-related violations Day raises.  *See Diaz*, 2010 WL 3910280, at *2 (explaining that "the term 'employer' . . . has been interpreted to include individuals with substantial control over the aspect of employment alleged to have been violated").

In sum, while Day's "allegations are somewhat vague," they are sufficient at "this early stage of the litigation."  *Winfield v. Babylon Beauty Sch. of Smithtown Inc.*, 89 F. Supp. 3d 556, 569 (E.D.N.Y. 2015); *see, e.g.*, *Leal v. Masonry Services, Inc.*, No. 12-cv-0588 (DLI) (VVP), 2013 WL 550668, at *2-3 (E.D.N.Y. Feb. 12, 2013) (denying dismissal where the plaintiff asserted that defendants were "owners, principal shareholders, and directors" of the corporate defendants who "made major personnel decisions and dominated day-to-day operations," and that the plaintiff "worked under the[ir] direction"); *Rahman v. Red Chili Indian Cafe, Inc.*, No. 17-cv-5156 (RA), 2021 WL 2003111, at *2 (S.D.N.Y. May 19, 2021) (finding that plaintiffs had pleaded individuals were their employers when they alleged that "the Individual Defendants are each an owner and/or shareholder of [the restaurant], and that each had the power to hire and fire Restaurant employees, and control the terms and conditions of Plaintiffs' employment, including establishing their wages, settling their work schedules, and maintaining their employment records").

Accordingly, the Court finds that Day has pleaded that Bratton was Day's employer under the NYLL and will not dismiss any claims against Bratton on this basis.

## III.   Day Has Failed to Plead NYLL Wage Violations (Counterclaim 4 and Third-Party Claim 2)

Day's first NYLL claim against Savor and Bratton is for violations of the statute's wage protections.  The Court concludes that Day has not plausibly pleaded such a violation.

The NYLL's substantive wage requirement is that employees be paid the New York State minimum wage for each hour worked.  N.Y. Lab. Law § 652.[7]  Therefore, to state a minimum wage claim, a plaintiff must "allege facts about her salary and working hours, such that a simple arithmetical calculation can be used to determine the amount owed per pay period." *Zhen Ming Chen v. Y Cafe Ave B Inc.*, No. 18-cv-4193 (JPO), 2019 WL 2324567, at *2 (S.D.N.Y. May 30, 2019).  Day fails to do this: although she alleges that Savor owes her $69,944 in unpaid wages, she does not allege the number of hours she worked for those wages.  Thus, the Court has insufficient information from which it can infer that Savor's failure to pay Day resulted in her being paid under the state minimum wage.

This conclusion does not change even upon consideration of the employment agreement, which states that Day would "be paid $11.00 per hour based upon a 40 hour work week, plus $64.00 per hour for work allocated to new business for such week and plus $114.00 per hour for work allocated to non-new business for such week less $11.00 multiplied by the amount of hours allocated to neither such category for such week."  Employment Agreement at 1.[8]  This formula— which is far from a model of clarity—appears to contemplate that the lowest amount Day could possibly be paid is $11.00 per hour in a 40-hour work week, assuming she spent no hours on new business and no hours on non-new business.  Taking in Day's favor that this compensation formula never changed throughout her employment, $11.00 per hour would fall short of New York's minimum hourly wage during 2018 and 2019, which was between $12.00 and $15.00 depending on the precise year and the size of the employer.  N.Y. Lab. Law § 652(1)(A).  But Day never

---

[7] The NYLL sets a minimum wage for New York City employers of either $12.00 or $13.00 per hour on and after December 31, 2017, and either $13.50 or $15.00 per hour on and after December 31, 2018, depending on the employer's size.  N.Y. Lab. Law § 652(1)(A).

[8] $11.00 per hour was the NYLL minimum wage for large New York City employers in 2017, the year the Employment Agreement was signed.  N.Y. Lab. Law § 652(1)(A).

alleges that she was actually paid only $11.00 per hour for a 40-hour week throughout her tenure, and as a result, this potential compensation scheme as described in the employment agreement is inadequately pled.  Accordingly, the Court cannot rely on this agreement to infer a minimum wage violation.[9]

The language of Day's pleading suggests that she may be attempting to assert a gap-time claim under the NYLL, as opposed to, or in addition to, a minimum-wage claim.  *See* CC ¶ 94; TPC ¶ 24 (stating that Savor and Bratton have "refused to pay Day for all the hours she worked and the commissions she earned, in violation of [the] NYLL").  In *Lundy v. Catholic Health System of Long Island Inc.*, 711 F.3d 106 (2d Cir. 2013), the Second Circuit discussed without deciding the possibility that the NYLL contemplated "gap-time" claims—that is, claims that an employee was not paid the wages to which she was entitled, even if that failure did result in minimum wage violations.  *Id.* at 118.  The court posited that such a claim "would be consistent with" the language of NYLL § 663(1), which states that "'[i]f any employee is paid by his or her employer less than the wage to which he or she is entitled . . . he or she shall recover in a civil action the amount of *any such* underpayments . . . .'"  *Id.* (quoting N.Y. Lab. Law § 663(1)).  Rather than decide the issue, however, *Lundy* remanded to the district court to reconsider its dismissal of the NYLL claim. Relying on *Lundy*, some courts in this District have found gap-time claims cognizable under the NYLL even when they seek agreed-upon wages that exceed the minimum wage.  *See, e.g.*, *Almanzar v. C & I Assocs., Inc.*, 175 F. Supp. 3d 270, 278 (S.D.N.Y. 2016) (concluding that the NYLL "allow[s] 'gap time claims' in which an employee seeks to be paid her regular hourly rate for previously uncompensated time . . . [and that] [g]ap time claims can be brought pursuant to

---

[9] This pleading deficiency would pose similar problems for Day's minimum wage claims under the FLSA if the Court had not dismissed those claims on other grounds.

state law even if an employee's average hourly pay is greater than the minimum wage"); *Werst v.*

*Sarar USA Inc.*, No. 17-cv-2181 (VSB), 2018 WL 1399343, at *7 (S.D.N.Y. Mar. 16, 2018).

The Court, however, finds more persuasive a competing analysis of *Lundy* presented by

another judge of this District:

> By way of the first ellipses in the quotation above, *Lundy* eliminated what this
> Court views as an important element of the statutory scheme.  The full provision
> reads: "If any employee is paid by his or her employer less than the wage to which
> he or she is entitled *under the provisions of this article*, he or she shall recover in a
> civil action the amount of any such underpayments . . . ."   NYLL §
> 663(1) (emphasis added).  The "article" referenced is Article 19—the Minimum
> Wage Act, which provides that each employer shall pay a wage not less than the
> minimum wage rate set forth in NYLL § 652.  The provisions of Article 19 do not
> specify any relief that is greater than the minimum wage.

*McGlone v. Cont. Callers Inc.*, 114 F. Supp. 3d 172, 173 (S.D.N.Y. 2015*); accord Williams v.*

*Epic Sec. Corp.*, 358 F. Supp. 3d 284, 302 (S.D.N.Y. 2019).  In other words, *Lundy* appeared to

omit critical wording that specified that an employee may recover the unpaid wages to which she

is entitled *under the NYLL*.  And the NYLL entitles an employee to substantive wages only at the

state minimum wage; it does not permit an employee to recover substantive wages that she may

be contractually owed beyond that amount.  Other provisions of the NYLL that authorize recovery

for unpaid wages do, as some courts have observed, use the term "full"—but this term is better

understood as describing the full amount of the substantive wages that are guaranteed by the

NYLL's minimum wage provisions, rather than as the "full" wages that may be due an employee

through a contractual agreement.  *See, e.g.*, N.Y. Lab. Law § 198(1-a) ("On behalf of any employee

paid less than the wage to which he or she is entitled under the provisions of this article . . . the

commissioner shall assess against the employer the full amount of any such underpayment.");

*Gottlieb v. Kenneth D. Laub & Co.*, 82 N.Y.2d 457, 464 (N.Y. 1993) (concluding that § 198 "was

intended merely to afford procedural rules . . . to apply in actions brought for wage claims created

under the substantive provisions of [the] Labor Law" and accordingly holding that the NYLL does not authorize the award of attorneys' fees for a wage dispute brought under contract law and not the NYLL).  Accordingly, the Court concludes that a "gap-time" claim that seeks wages owed that exceed the state minimum wage is not cognizable under the NYLL.

In her opposition brief, Day appears to construe her minimum wage claim in a different manner, arguing that it "fall[s] under the prompt payment provisions of the NYLL."  Opp. MOL at 8; *see id.* at 10 ("Savor and Bratton fail entirely to address Day's allegations that her claim is based specifically on a violation of the . . . NYLL's prompt/timely payment requirements.").  That is, she appears to construe her claim not as alleging that she received payments that fell below the minimum wage or below agreed-upon wages, but as alleging that Savor's delays in paying her had the effect of evading the minimum wage.  Day has, however, already raised a claim under the NYLL's timely payment provision, which Savor sought to dismiss for the first time in its reply brief, Reply MOL at 6-7.  Even if the Court were to consider an argument first raised on reply— which it ordinarily may not do, *see Playboy Enterprises, Inc. v. Dumas*, 960 F. Supp. 710, 720 n.7 (S.D.N.Y. 1997), *aff'd*, 159 F.3d 1347 (2d Cir. 1998)—it would find that Day has adequately stated a claim.  The NYLL's prompt payment requirement appears to be independent of its minimum wage requirement.  *See* N.Y. Lab. Law § 191(1) (providing that a "commission salesperson" shall be paid "not less frequently than once in each month" and that a "clerical" or "other worker shall be paid the wages earned in accordance with the agreed terms of employment, but not less frequently than semi-monthly").[10]  Assuming in Day's favor that she falls under one of these

---

[10] The FLSA's prompt payment requirement, by contrast, is violated only when late payments have "the effect of evading the minimum wage requirements."  *Sarit v. Westside Tomato, Inc.*, No. 18-cv-11524 (RA), 2020 WL 1891983, at *6 (S.D.N.Y. Apr. 16, 2020); *see Rogers v. City of Troy, N.Y.*, 148 F.3d 52, 55-56 (2d Cir. 1998); *Chuchuca v. Creative Customs Cabinets Inc.*, No. 13-cv-2506 (RLM), 2014 WL 6674583, at *9 (E.D.N.Y. Nov. 25, 2014) (dismissing an FLSA claim when "nothing suggest[ed] that the delinquencies [in timely and adequate payments] were so severe as to render plaintiff's regular rate of pay below the minimum wage").

worker categories,[11] she has stated a violation of § 191(1) by alleging that she was paid less frequently than monthly.  CC ¶ 51.  Day's § 191(1) claim, however, is limited to her timeliness allegations, because § 191 "by its terms only involves the timeliness of wage payments, and does not appear to afford to plaintiffs any substantive entitlement to a *particular* wage."  *Myers v. Hertz Corp.*, 624 F.3d 537, 545 n.1 (2d Cir. 2010); *accord Ansoralli v. CVS Pharmacy, Inc.*, No. 16-cv-1506 (CBA) (JRR), 2017 WL 8790986, at *6 (E.D.N.Y. Sept. 29, 2017) (collecting "cases in this circuit . . . [that] have squarely addressed this issue and have determined that § 191 is not the appropriate vehicle for recovering unpaid contract wages above the statutory minimum wage").[12] Moreover, given § 191(1)'s availability, Day may not seek recovery for untimely payments under another section of the NYLL.  *See Ansoralli*, 2017 WL 8790986, at *6 (suggesting that a party "cannot state a claim under [a section of the NYLL] based on conduct that independently violates another section of the NYLL").

## IV.  Day Has Stated a Claim for Retaliation Under the FLSA and the NYLL (Counterclaims 8 and 9 and Third-Party Claims 6 and 7)

Day claims that she engaged in two distinct protected activities, both of which triggered retaliatory acts by Savor and Bratton.  First, she alleges that her August 1, 2019 verbal statement

---

[11] Commission salespersons and clerical or other workers do not include individuals "whose principal activity is of a supervisory, managerial, executive or administrative nature" or individuals working in a "bona fide executive, administrative or professional capacity whose earnings are in excess of nine hundred dollars a week."  N.Y. Lab. Law § 190(7).

[12] Savor argues that Day
    alleges that "Savor deducted $1,219.08 from Day's paychecks in excess of 2018 required health insurance premiums during the 25 pay periods covering December 16, 2017 through December 31, 2018 for coverage beginning January 1, 2018 through December 31, 2018.  Savor also deducted health insurance premiums from Day's paychecks foreach pay period covering January 1, 2019 through July 31, 2019."  Implicit in those allegations is that Day's "pay period" was bi-weekly and that she was issued pay checks for each period from which health insurance premiums were deducted.  Accordingly, Day's . . . NYLL 191 claims also fail because Day's own allegations when and how much she was paid render these claims impossible.
Reply MOL at 6-7 (quoting CC ¶¶ 58-59).  While Savor may ultimately prevail on this argument later in the litigation, the Court must at this stage make all factual inferences in Day's favor.

to Bratton made immediately after her termination that she was owed wages and commissions caused Bratton to accuse her of misappropriating Savor's confidential information. Second, she alleges that her September 30, 2019 complaint with the New York DOL caused Bratton to, through Savor, file this action against Day. The Court finds that Day has sufficiently pleaded FLSA and NYLL retaliation based on her DOL complaint.[13]

The FLSA provides that it is "unlawful for any person . . . to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under [the FLSA]." 29 U.S.C. § 215(a)(3). The NYLL similarly provides that no "person[] shall discharge, threaten, penalize, or in any other manner discriminate or retaliate against any employee . . . because such employee has made a

---

[13] The finding that Day has failed to plead the interstate commerce and revenue elements that are required for her FLSA wage claims does not preclude her FLSA retaliation claims. The Second Circuit has not commented on this issue—although recent precedent discussing the standard for FLSA retaliation claims does not mention the interstate commerce and revenue requirements, *see Greathouse v. JHS Sec. Inc.*, 784 F.3d 105, 109-16 (2d Cir. 2015). District courts in this Circuit, in turn, appear split. *Compare Centeno-Bernuy v. Perry*, 302 F. Supp. 2d 128, 136 (W.D.N.Y. 2003) ("[T]he anti-retaliation provision of the FLSA does not apply only to employers; it applies to 'any person.'"); *Bergman v. Kids By the Bunch Too, Ltd.*, No. 14-cv-5005 (DRH) (SIL), 2018 WL 1402249, at *8 n.4 (E.D.N.Y. Feb. 16, 2018), *adopted by* 2018 WL 1401324; *and Xelo v. Mavros*, No. 03-cv-3665 (NG) (MDG), 2005 WL 2385724, at *5-6 (E.D.N.Y. Sept. 28, 2005) (implicitly accepting a plaintiff's argument that his FLSA retaliation claim "must survive summary judgment" notwithstanding the lack of enterprise coverage or individual coverage "since this provision of the FLSA does not require the existence of an enterprise or an employee engaged in commerce," and dismissing the claim on separate grounds), *with Lamont v. Frank Soup Bowl, Inc.*, No. 99-cv-12482 (JSM), 2001 WL 521815, at *5 (S.D.N.Y. May 16, 2001) (rejecting the argument that the commerce requirement does not apply to the FLSA's retaliation provision); *and Gonzalez v. El Acajutla Rest., Inc.*, No. 04-cv-1513 (JO), 2007 WL 869583, at *6 (E.D.N.Y. Mar. 20, 2007) ("An employee falls within the ambit of the FLSA's wage, overtime, and retaliation protections if either of two conditions exist: (1) if the employee individually was engaged in commerce or in the production of goods for commerce, or (2) the employer was an enterprise engaged in commerce or in the production of goods for commerce, regardless of whether the individual employee was so engaged.").

Several other Circuits, however, have concluded that "the anti-retaliation provisions of [the] FLSA apply to any person regardless of whether that person is an enterprise engaged in commerce." *Acosta v. Foreclosure Connection, Inc.*, 903 F.3d 1132, 1136 (10th Cir. 2018) (agreeing with similar holdings from the Third, Fifth, Sixth, Seventh, and Ninth Circuits). The plain text of the FLSA supports this reading, as it discusses the interstate commerce and revenue requirements only in its wage and overtime provisions. *Compare* 29 U.S.C. §§ 206, 207 (providing that the minimum wage and overtime requirements apply to "employees who in any workweek [are] engaged in commerce or in the production of goods for commerce, or [are] employed in an enterprise engaged in commerce or in the production of goods for commerce"), *with id.* § 215(a)(3) (providing that it shall be unlawful for "any person" to "discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee"). Accordingly, the Court finds that the anti-retaliation provision does not share the wage and overtime provisions' commerce and revenue requirements.

complaint . . . that the employer has engaged in conduct that the employee, reasonably and in good faith, believes violates any provision of this chapter . . . [or] because such employee has caused to be instituted or is about to institute a proceeding under or related to" the labor law.  N.Y. Lab. Law § 215(1)(a).  As NYLL and FLSA retaliation claims are governed by the same standard, *see Santi v. Hot in Here, Inc.*, No. 18-cv-3028 (ER), 2019 WL 290145, at *3-4 (S.D.N.Y. Jan. 22, 2019), the Court analyzes these claims together.

A plaintiff alleging retaliation "must first establish a prima facie case of retaliation by showing (1) participation in protected activity known to the defendant . . .; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action." *Mullins v. City of New York*, 626 F.3d 47, 53 (2d Cir. 2010).  As to the first prong, although a complaint need not be a formal filing to qualify as a protected activity, it "must be sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for their protection." *Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 14 (2011).  As to the second prong, "[a]n employment action disadvantages an employee if it well might have dissuaded a reasonable worker from making or supporting similar charges." *Mullins*, 626 F.3d at 53.  And as to the third prong, a "causal connection may be established by (1) evidence of retaliatory animus directed against a plaintiff by the defendant; or (2) a close temporal proximity between the protected activity and the adverse employment action." *Torres v. Gristede's Operating Corp.*, 628 F. Supp. 2d 447, 473 (S.D.N.Y. 2008).

As an initial matter, the Court finds that neither of Day's retaliation claims are barred simply because her complaints occurred after her termination.  "[D]istrict courts in this Circuit have applied the Supreme Court's reasoning in [Title VII cases] to FLSA retaliation claims,

finding that in some circumstances plaintiffs can bring retaliation claims against former employers for post-employment conduct." *Jian Zhong Li v. Oliver King Enterprises, Inc.*, No. 14-cv-9293 (VEC), 2015 WL 4643145, at *3 (S.D.N.Y. Aug. 4, 2015).  Savor rightly notes that this Court has previously concluded that NYLL retaliation claims may survive only if an employee makes a complaint "while employed" by the defendant.  *Rahman*, 2021 WL 2003111, at *3.  On further consideration, however, the Court is persuaded by Judge Sweet's competing reasoning in *Oram v. SoulCycle LLC*, 979 F. Supp. 2d 498 (S.D.N.Y. 2013), in which he concluded that "[t]o leave a discharged employee without remedy for retaliation because of a failure to have complained during employment defeats the salutary purpose of § 215."  *Id.* at 510; *accord Liverpool v. Con–Way, Inc.*, No. 08-cv-4076 (JG) (JO), 2009 WL 1362965, at *11-12 (E.D.N.Y. May 15, 2009); *Alvarado v. GC Dealer Servs. Inc.*, 511 F. Supp. 3d 321, 358 (E.D.N.Y. 2021).  Having examined the NYLL's anti-retaliation provision and having found no compelling reason to interpret it differently from the FLSA's anti-retaliation provision in this respect, the Court finds that both statutes may cover former employees' complaints.  The Court thus turns to both of Day's alleged complaints.

Day's August 1 verbal complaint to Bratton that she was owed wages and commissions was not "sufficiently clear and detailed" for a reasonable employer to understand it as an "assertion of rights protected by . . . statute and a call for their protection," because her comment could easily have been describing unpaid contractual wages rather than wages guaranteed by statute.  *Kasten*, 563 U.S. at 14.  Nor did Day otherwise suggest to Bratton that Savor's underpayment violated statutory law.  *Cf. Dunn v. Sederakis*, 143 F. Supp. 3d 102, 110 (S.D.N.Y. 2015) (finding that when a worker put her employer "on notice only that [she] believed she had not been paid what her employer had promised . . . [she] did not thereby assert a violation of the FLSA, or even suggest that she might be doing so"); *id.* at 113 (suggesting that "a clear articulation of facts indicative of

illegality[] is required for an oral complaint to support a claim of FLSA retaliation").  Day contends that "Savor's and Bratton's argument that Bratton did not know that not paying an employee what is owed to her is a violation of the FLSA and the NYLL is pure sophistry."  Opp. MOL at 12.  But failing to pay earned wages and commissions is not, *per se*, a violation of those laws; it is only when that failure to pay has the effect of depriving an individual of the state minimum wage that such an act violates the statutes.

By contrast, Day's complaint with the New York DOL could reasonably have been understood as a complaint of statutory wage violations—even if Savor and Bratton genuinely believed that such a complaint was meritless.  Thus, the question becomes whether Savor's suit plausibly alleges retaliation against that act.  "[T]he category of conduct that constitutes actionable retaliation includes more than just adverse employment actions or ultimate employment decisions."  *Torres*, 628 F. Supp. 2d at 472.  Specifically, "courts have held that instituting bad faith or groundless counterclaims or instituting bad faith litigation against the employee constitutes actionable retaliation."  *Li*, 2015 WL 4643145, at *3.  This is so even when a suit is brought against a former employee, because "such a claim can still injure [an individual's] ability to secure future employment by damaging [her] reputation"—precisely the harm Day alleges here.  *Pawlowski v. Kitchen Expressions Inc.*, No. 17-cv-2943 (ARR) (VMS), 2017 WL 10259773, at *4 (E.D.N.Y. Dec. 15, 2017).

Day asserts that Bratton's purpose in causing Savor to file this case was to retaliate against Day for filing her DOL complaint.  "[T]his allegation can be reasonably interpreted as a complaint that the [suit] is baseless or would not have been pursued absent a retaliatory motive."  *Romero v. Bestcare, Inc.*, No. 15-cv-7397 (JS) (GRB), 2018 WL 1702001, at *6 (E.D.N.Y. Feb. 28, 2018), *adopted by* 2018 WL 1701948.  To be sure, Savor accused Day of misappropriating confidential

information before Day filed her DOL complaint—but it is nonetheless plausible that Savor chose to initiate litigation, in whole or in part, because of that complaint.  Further, Day explicitly alleges that Savor's suit is baseless and directly refutes the factual allegations made therein.  CC ¶¶ 7, 42-44; *cf. Kim v. Lee*, No. 21-cv-3552 (LJL), 2021 WL 6052122, at *12 (S.D.N.Y. Dec. 20, 2021) (concluding that a plaintiff failed to allege that a counterclaim was baseless, as necessary to plead retaliation, when he did "not deny the principal allegations of the counterclaims.").  Savor responds that Day's own Answer admits some of the facts that underlie Savor's complaint against Day—namely, that Day accessed what Savor characterized as confidential information after she was fired and that this information was present on her devices and accounts weeks after she was fired.  MOL at 19-20.  But accepting Day's facts as true and drawing all reasonable inferences in her favor, she may have done nothing wrong in accessing that information or having it present on her devices and accounts, because Bratton knew that she planned complete her timesheets and expense reports and said nothing about her authorization to access work documents in order to prepare those reports.  *See* CC ¶¶ 36-37.  While Savor's claims against Day may ultimately prove to have a valid foundation—which would likely prove fatal to her retaliation claim—at this stage of the litigation, the Court concludes that Day has plausibly alleged that Savor's suit was undertaken in bad faith and without a basis in fact or law.

Accordingly, the Court denies Savor's motion to dismiss Day's FLSA and NYLL retaliation claims.

## V.      Day Has Failed to Plead Fraud (Counterclaim 10 and Third-Party Claim 8)

Day alleges that Savor and Bratton defrauded her by deducting an excess $1,219.08 from her paychecks in 2018 and by "demanding" that she pay insurance premiums after her termination for the months of August to December 2019.  Under New York law, fraud consists of "a false

representation of material fact, knowledge by the party who made the representation that it was false when made, justifiable reliance by the plaintiff, and resulting injury." *Evans v. Ottimo*, 469 F.3d 278, 283 (2d Cir. 2006).  Omissions of material fact may also be fraudulent.  *See Sawabeh Info. Servs. Co. v. Brody*, 832 F. Supp. 2d 280, 297 (S.D.N.Y. 2011).  "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  Particularly in light of this heightened pleading standard, Day has failed to adequately allege fraud.

The Court first addresses the excess deduction in 2018.  When "Bratton offered to make Day a Savor employee, [she] told Day she would have to pay the family plan coverage premium." CC ¶ 55.  Day does not allege that this statement itself was false; she alleges only that Savor then "deducted $1,219.08 from Day's paychecks in excess of 2018 required health insurance premiums during the 25 pay periods covering December 16, 2017 through December 31, 2018 for coverage beginning January 1, 2018 through December 31, 2018."  *Id.* ¶ 58.  This may suffice as an allegation that Savor and Bratton improperly deducted more money from Day's paychecks over a period of time than was required for her health insurance premiums during that same period—but Day does not allege any misstatements or omissions by Bratton or Savor on which she relied regarding those excess deductions.  For instance, she does not allege that Savor and Bratton told her that the excess funds were required to be deducted from her paycheck to maintain her health insurance or that Day did not receive health insurance for that time period.  Savor and Bratton's actions are certainly relevant to Day's unlawful deduction claims (which are not implicated in this motion), but this conduct does not describe fraud.

Nor do Day's allegations regarding the premium payments she made after her termination state a claim for fraud.  The relevant statements allegedly made by Bratton regarding these

payments are contained in an email "saying that Day's NY Continuation Coverage premiums would be $2,548.64 per month," and another email "saying that $2,548.64 was due to Savor for the August 2019 health insurance premium." CC ¶¶ 60-61. According to Day, "Bratton demanded the premium payments from Day . . . making it clear that if Day did not pay those premiums, Savor/Bratton would cancel Day's family plan coverage." *Id.* ¶¶ 65-66.

These allegations do not describe fraud, but rather the standard operation of New York's continuation coverage scheme, known as COBRA. "COBRA requires that a group health plan provide for continuation coverage of medical benefits for, *inter alia*, laid-off employees . . . [t]he qualified beneficiary may elect continuation coverage within sixty days of the qualifying event or of notice of the qualifying event, whichever is later. Premiums are to be paid by the employee." *Loc. 217, Hotel & Rest. Emps. Union v. MHM, Inc.*, 976 F.2d 805, 809 (2d Cir. 1992) (citing 29 U.S.C. § 1161(a), 29 U.S.C. § 1165(1), and 29 U.S.C. § 1162(3)). The formal termination letter Bratton sent to Day on August 1 accurately characterized this arrangement, stating that after July 31, 2019, Day "*may elect* to continue health coverage at [her] own expense in accordance with . . . COBRA." Connolly Aff. Ex. 2 (emphasis added). This renders implausible Day's allegation that Bratton demanded these payments of her, or that there was anything improper about Bratton's statement that Savor would cancel Day's coverage if she did not pay these premiums.

Day nonetheless contends that Bratton's statements were false because at the time they were made, Bratton knew that Savor owed Day money for unpaid wages and commissions and that Savor had deduced excessive amounts from Day's 2018 insurance premiums. CC ¶ 62. But knowledge that Savor might have owed Day money for unrelated reasons does not render Bratton's descriptions of COBRA's requirements false. Nor is there any statutory or other requirement that a former employer must pay for a former employee's COBRA premiums when the former

employer owes money to the former employee.  In other words, the allegation that Savor owed

Day money when she paid these premiums simply describes an injury that would have existed

before she paid the premiums and that would be unchanged by her paying, or not paying, the

premiums.  Nor does Day plead that she was injured *by virtue of* paying these premiums: for

instance, she does not allege that she did not receive the health insurance for which she paid, or

that the true premiums were lower than what Bratton represented.

Accordingly, the Court dismisses Day's fraud claims against Savor and Bratton.

## VI.   Day's Shareholder Liability Claim Is Dismissed as Premature (Third-Party Claim 10)

Finally, the Court dismisses Day's shareholder liability claim.  New York law provides

that "the ten members with the largest percentage ownership interest" of any domestic limited

liability company "shall jointly and severally be personally liable for all debts, wages or salaries

due and owing to any of its laborers, servants or employees, for services performed by them for

such limited liability company."   N.Y. Limit. Liab. Co. § 609(c).   There are two relevant

prerequisites to raising a claim under this provision.   First, a claimant "shall give notice in

writing . . . that he or she intends to hold such member liable," and shall do so "within one hundred

eighty days after termination of such services."  *Id.*   Second, "[a]n action to enforce such liability

shall be commenced within ninety days after the return of an execution unsatisfied against the

limited liability company upon a judgment recovered against it for such services."  *Id.*   Savor

argues that Day has not satisfied either of these statutory requirements.

Day was terminated on August 1, 2019, meaning that she must have given Bratton and any

other potentially liable shareholders written notice of her intent to hold them personally liable on

or before January 28, 2020.  In her Third-Party Complaint, signed on January 27, 2020 and filed

on January 29, 2020, Day alleges that "[p]ursuant to NY Limited Liability Company Law § 609(c),

[she] seeks to hold Bratton and John/Jane Does 1-9 personally liable, as the tenth largest shareholders/members of Savor, for [her] unpaid wages, commissions and expenses *and has notified them of her intent to do the same*." TPC ¶ 43 (emphasis added). This statement plausibly alleges that Day gave the statutorily required written notification on or before January 28, 2020.

Section 609(c)'s obligation, however, "is triggered only after . . . an execution unsatisfied against the limited liability company upon a judgment recovered against it for such services has been returned." *Camara v. Kenner*, No. 16-cv-7078 (JGK), 2018 WL 1596195, at *7 (S.D.N.Y. Mar. 29, 2018). Here, Day does not have an unsatisfied judgment against Savor—nor could she, given that her claims against Savor are still undecided. Because Day has not satisfied this "precondition," her shareholder liability claim is dismissed as premature. *Id.* (dismissing claims against individuals that were brought under section 609(c) for this reason); *see also Imbarrato*, 2020 WL 1330744, at *5 (dismissing claim when a plaintiff had not satisfied this precondition).

## VII.   Leave to Amend Is Granted

"Ordinarily a plaintiff should be granted leave to amend at least once after having the benefit of a court's reasoning." *Obra Pia Ltd. v. Seagrape Invs. LLC*, No. 19-cv-7840 (RA), 2021 WL 1978545, at *3 (S.D.N.Y. May 18, 2021); *see Bryant v. Steele*, 64 F. Supp. 3d 441, 443 (E.D.N.Y. 2014) (granting in part a motion for leave to amend a complaint after dismissing some, but not all, of a plaintiff's claims). The Court grants leave to amend here because Day may be able to plead additional facts that would cure the deficiencies the Court has identified in some of her claims. Accordingly, the Court's dismissal of those claims is without prejudice.

**CONCLUSION**

For the foregoing reasons, Savor's motion for judgment on the pleadings is granted, with the exception of Day's retaliation claims against Savor and Bratton under the FLSA and the NYLL.

The Clerk of Court is respectfully directed to terminate the motion at docket number 70.  If Day seeks to amend her pleading to address the deficiencies identified herein, she shall do so by no later than three weeks from the date of this Order.  Within one week of any such amended pleading, Savor shall write a letter to the Court discussing next steps, including whether it plans to move to dismiss Day's amended claims and/or whether it seeks to amend its pending summary judgment motion in response to Day's amended claims.

SO ORDERED.

Date: March 29, 2022
New York, New York

_____
Hon. Ronnie Abrams
United States District Judge